**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

DEININGER & WINGFIELD, P.A.;                                                           PLAINTIFFS
and NEIL DEININGER

v.                                    No. 4:08CV00500 JLH

INTERNAL REVENUE SERVICE                                                              DEFENDANT

**OPINION AND ORDER**

On June 6, 2008, Deininger & Wingfield, P.A., and Neil Deininger filed a complaint seeking disclosure by the Internal Revenue Service of agency records. After the IRS filed its answer, the parties resolved all issues in the complaint except for the plaintiffs' attorneys' fees. The plaintiffs have filed a motion for attorneys' fees and costs pursuant to 5 U.S.C. § 552 (a)(4)(E) which the IRS opposes. For the following reasons, the motion for attorneys' fees is granted.

**I.**

On August 28, 2007, Neil Deininger made a request under the Freedom of Information Act, 5 U.S.C. § 552, to the Internal Revenue Service for any and all written materials disseminated to IRS officers assigned to Arkansas at a training session held in Tulsa, Oklahoma, on August 27-31, 2007. The request was made on the firm letterhead of Deininger & Wingfield, P.A., and Deininger says he made the request on behalf of the firm, although the IRS asserts he was acting as an individual. On October 3, 2007, John Rodriguez, an officer in the Austin disclosure office, sent a response to Deininger saying that the IRS would not be able to respond to the request by October 5, which was the twenty-day period prescribed by law, but that he should expect a response to the request on November 30, 2007. A week later, on October 10, Rodriguez contacted Deininger to inform him

that the request for the training materials was being transferred. Rodriguez also sent a letter to Deininger on behalf of Stephanie Young, a manager in his office, advising Deininger of the transfer.

Sharon Baker received the transferred request in the Baltimore office on October 23, 2007. Rodriguez forwarded some "potentially responsive" materials to Baker via e-mail on October 24, 2007. Baker sent Deininger a letter on November 9, 2007 informing him that the IRS would be unable to respond to the request by November 13, 2007, but that he may expect a response by January 25, 2008. In her affidavit, Baker said that on November 30, she performed a cursory review of the materials she received from Rodriguez via e-mail on October 24. She could not determine if the materials were responsive to the request or where they originated, so she contacted other officers with the IRS. On December 4, 2007, Baker spoke with Annette Bright in the Memphis office, who informed her that she had sent Rodriguez the materials. The following day, December 5, Baker spoke with Rodriguez about which office should be handling the request. Rodriguez informed her that the Austin office would not take the request back, and Baker attempted to transfer the request to the St. Louis Disclosure office, but Karen Hines informed her that the St. Louis jurisdiction did not handle the training in Arkansas and she would not accept a transfer of the case.

Baker sent a second letter to Deininger on January 18, 2008, informing him that the IRS was still processing his request and that if they were still unable to respond by March 28, 2008, he would be contacted about his case. In February and March, Baker contacted different individuals who she thought had taught the course in order to track down the materials. She says that she spoke with Lisa Taylor and that "[d]ue to a miscommunication, I thought that Taylor did not have any materials responsive to the request."

After Deininger received the January 18, 2008 letter, he said that he left Baker several voicemail messages to inquire about the request. On March 10, Deininger sent a letter to Baker inquiring about the status of the request. He indicated that his assistant had spoken to Baker on February 20, 2008, but had not heard anything back since then. On March 21, Baker sent another letter informing Deininger that the request was still being processed and that the IRS would be unable to respond until May 12, 2008. Baker continued to contact various individuals in the IRS in March and April. She noted in her affidavit that Rena Skeen, who worked in the Learning and Education department, sent her a link with education materials for continuing professional education for the fiscal year of 2007. However, Baker noted that the information in the link was not responsive to the request and that Skeen told her to contact Kimberly Rogers, a training coordinator, who would have information about the training agenda specific to Little Rock. On May 1, Rogers said she would provide the information to Baker, but Baker sent out another letter on May 7 informing Deininger that the information would not be available until July 18, 2008.

On June 6, 2008, Deininger filed this action to seek disclosure of the documents. Baker contacted Rogers again June 20, and Rogers suggested that Baker contact Jim Huff, who was in charge of training materials for revenue officers. Huff told Baker on June 23 that he did not have information responsive to the request, and at that point Baker closed the case because Deininger filed suit.

On August 12, 2008, the IRS released 589 pages of documents responsive to the request through its attorney, Carmen Banerjee. Banerjee indicated that the IRS was still trying to determine whether there were other responsive documents, and on September 5, Banerjee released an additional 122 pages of responsive documents. The letter enclosed with those documents stated that the records

released on August 12 and September 5 "constitute the universe of records responsive to the FOIA request." During a telephone conference on November 25, 2008, the parties advised the Court that all issues except plaintiffs' claims for attorneys' fees and costs had been resolved. The Court set a schedule for the plaintiffs to file a motion for attorneys' fees, for the defendant to respond, and the plaintiffs to reply to the response.

## II.

### A.  STANDING OF DEININGER & WINGFIELD, P.A.

The IRS argues that Deininger & Wingfield, P.A. is not a proper party to this lawsuit and therefore is not eligible for attorneys' fees. Any person who submitted a request for existing documents that the petitioned agency denied has standing to bring a FOIA challenge. *Three Forks Ranch Corp. v. Bureau of Land Mgmt.*, 358 F. Supp. 2d 1, 2 (D.D.C. 2005). Under the FOIA, a "person" includes a corporation. 5 U.S.C. § 551(2). It is permissible for an attorney or other agent to file a FOIA request on behalf of a corporation because a corporate entity is unable to sign anything itself. *Three Forks Ranch*, 358 F. Supp. 2d at 3. However, courts have held that "the attorney or agent must adequately identify that he or she is making the FOIA request on behalf of the corporation in order for the corporation itself to have standing to pursue a FOIA action." *SAE Productions, Inc. v. F.B.I.*, 589 F. Supp. 2d 76, 80 (D.D.C. 2008); *Mahtesian v. U.S. Office of Pers. Mgmt.*, 388 F. Supp. 2d 1047, 1048-49 (N.D. Cal. 2005); *Three Forks Ranch*, 358 F. Supp. 2d at 3; *Unigard Ins. Co. v. Dep't of Treasury*, 997 F. Supp. 1339, 1341-42 (S.D. Cal. 1997). The requesting agent or attorney must not only indicate that he or she is making the request on behalf of a corporation, but must also expressly specify the identity of that entity. *Mahtesian*, 388 F. Supp. 2d at 1050 (citing *Unigard*, 997 F. Supp. at 1342).

Here, paragraph 6 of the "FACTS" section of the complaint alleges, "On August 28, 2007, Neil Deininger, acting on behalf of Deininger & Wingfield's behalf, submitted a request under the FOIA to the IRS for any and all written materials disseminated to Arkansas Revenue officers at a training session held in Tulsa, Oklahoma, the week of August 27-31, 2007." In its answer, the IRS admitted the allegations in paragraph 6 of the "FACTS" section of the complaint. Thus, the IRS admitted that Deininger's FOIA request was submitted on behalf of Deininger & Wingfield. Therefore, Deininger & Wingfield has standing.[1]

**B.  ATTORNEYS' FEES UNDER 5 U.S.C. § 552**

Under the FOIA, a "court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E). A plaintiff has substantially prevailed "if the complainant has obtained relief through either -- (I) a judicial order or an enforceable written agreement or consent decree; or (II) a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." 5 U.S.C. § 552(a)(4)(E)(ii). It is undisputed that this current version of the fee-shifting provision, which was amended in 2007, applies to this case, which was filed in June 2008. The impetus for the amendment of the provision is clear from its legislative history:

> This bill . . . addresses a relatively new concern that, under current law, Federal agencies have an incentive to delay compliance with FOIA requests until just before a court decision is made that is favorable to a FOIA requestor. The Supreme Court's decision in *Buckhannon Board & Care Home, Inc. v. West Virginia Dep't of Health & Human Resources*, 532 U.S. 598, 121 S. Ct. 1835, 149 L. Ed. 2d 855 (2001),

---

[1] The parties have not addressed the issue of whether a law firm can recover fees for representing itself in an FOIA case, so the Court will not address that issue. *See Baker & Hostetler LLP v. United States Dep't of Commerce*, 473 F.3d 312, 324-26 (D.C. Cir. 2006).

5

> eliminated the "catalyst theory" for attorneys' fees recovery under certain federal civil rights laws. When applied to FOIA cases, *Buckhannon* precludes FOIA requestors from ever being eligible to recover attorneys fees under circumstances where an agency provides the records requested in the litigation just prior to a court decision that would have been favorable to the FOIA requestor. The bill clarifies that *Buckhannon* does not apply to FOIA cases. Under the bill, a FOIA requestor can obtain attorneys' fees when he or she files a lawsuit to obtain records from the Government and the Government releases those records before the court orders them to do so.

153 CONG. REC. S15701-04 (daily ed. Dec. 14, 2007) (statement of Sen. Leahy). Prior to the *Buckhannon* decision, the Eighth Circuit applied the "catalyst theory" to analyze cases requesting attorneys' fees under the FOIA. *Miller v. U.S. Dep't of State*, 779 F.2d 1378, 1389 (8th Cir. 1985). The Eighth Circuit has not ruled on a FOIA attorneys' fees case since the fee-shifting provision was amended, but the catalyst theory has been applied to analyze cases under the amended statute. *Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*, No. 08-2133 EGS/DAR, 2009 WL 1743757, at *3 (June 15, 2009); *Judicial Watch, Inc. v. Bureau of Land Mgmt.*, 562 F. Supp. 2d 159, 164 (D.D.C. 2008). A plaintiff has substantially prevailed under the catalyst theory if he can (1) prove eligibility by showing that the lawsuit was reasonably necessary and the litigation substantially caused the release of the requested records; and (2) prove that he was entitled to fees under four factors that the court weighs in determining whether attorneys' fees are appropriate. *Bureau of Land Mgmt.*, 562 F. Supp at 172-73; *see also Miller*, 779 F.2d at 1389.

To show that he is eligible for an award of attorneys' fees, a plaintiff must prove "that prosecution of the action could reasonably be regarded as necessary to obtain the information, and . . . that the existence of a lawsuit had a causative effect on the release of the information. *Miller*, 779 F.2d at 1389 (citing *Ginter v. Internal Revenue Service*, 648 F.2d 469, 471 (8th Cir. 1981)). "Though certainly a salient factor, 'the mere filing of the complaint and the subsequent release of

documents is insufficient to establish causation.'" *Bureau of Land Mgmt.*, 562 F. Supp. 2d at 173 (quoting *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1496 (D.C. Cir. 1984)). Courts must also look at other factors, including the demands of the search, the agency's backlog of FOIA requests, and plaintiff's attempts to resolve the issue out of court. *Id.*; *see also U.S. Dep't of Homeland Security*, 2009 WL 1743757, at *3. In *Bureau of Land Management*, the court found a causal connection between the filing of the complaint and the release of documents when, prior to the filing of the complaint, the defendant had anticipated releasing the requested documents on four different dates and then subsequently reneged without meaningful explanation, while it disclosed the requested documents shortly after the action was filed.

Similarly, in this case, Deininger requested documents from the IRS in August 2007, and was told in a series of letters to expect a response by the following dates: November 30, 2007, January 25, 2008, March 28, 2008, May 12, 2008, and June 18, 2008. None of the letters explained the delay or addressed the status of the request. The June 18, 2008 anticipated deadline was provided in a letter dated May 7, 2008. Deininger filed his complaint in this Court on June 6, 2008. On June 23, Baker closed her investigation because of the suit, but on August 12, 2008, Carmen Banerjee, attorney for the IRS, released 589 pages of documents responsive to Deininger's request. The months of unexplained delays in fulfilling the request for documents followed by the IRS's relatively quick production of documents after Deininger filed suit shows a causal connection between the filing of the complaint and the release of documents. The IRS asserts that it has provided extensive evidence of the diligent search it conducted, which would go to the demanding nature of the search. However, the affidavits of Rodriguez and Baker tend to show that the nature of the inquiries they undertook between August 2007 and June 2008 were not particularly

burdensome or time-consuming. There is no evidence that there was a backlog of FOIA requests. Deininger wrote on August 24, 2007, requesting documents pertaining to a training session for Arkansas Revenue officers during August 2007. The IRS Disclosure Office received the request on September 5, 2007. It was a simple request for current documents, not a complicated request for historic records that might be difficult to find. There is no legitimate reason that the documents could not have been provided within days after receipt of the request for them. Deininger attempted to resolve the issue out of court: he left Baker several voicemails after receiving her letter of January 18, 2008, and he wrote a letter March 10, 2008 inquiring about the status of the request, but he never received any specific responses other than anticipated dates the request may be filled. Under these facts, Deininger is eligible for attorneys' fees under the FOIA.

Once he has shown he is eligible for attorneys' fees under the FOIA, a plaintiff must show he is entitled to that award. To determine whether the plaintiff is entitled, the court takes into account four factors: (1) the public benefit to be derived from the case; (2) commercial benefit to the complainant; (3) the nature of the complainant's interest in the records sought; and (4) whether the government's withholding of the records had a reasonable basis in the law. *Miller*, 779 F.2d at 1389; *Bureau of Land Mgmt.*, 562 F. Supp. 2d at 173.

The first factor, the benefit to the public, reflects the intent of Congress for the public to have maximum access to government records consistent with the maintenance of national security and the orderliness of government operations. *Miller*, 779 F.2d at 1389. The Eighth Circuit observed:

> There is considerable public value in any disclosure which adds significantly to the fund of information which citizens may use in making political choices, and litigation which results in such disclosures is additionally beneficial when it causes a government agency to take seriously its responsibilities under FOIA.

*Id.* at 1390 (citation omitted). Deininger argues that the documents disclosed by the IRS in this case benefit the public because a review of the materials used to train revenue officers in the region allows the public to know whether the officers are appropriately carrying out tax policy and would allow the public to hold the IRS accountable if the officers were being trained in a way that violated taxpayer protections. The IRS argues that the documents do not assist the public in making vital political choices and that the records have little benefit because they fail to show wrongdoing by the government. The IRS also points out that Deininger has admitted that the documents released in this case "did not disclose information that directly and substantially benefitted the public . . . ." The nature and information in the released documents is significant to determine whether there is a benefit to the public or not. *See Cotton v. Heyman*, 63 F.3d 1115, 1120 (D.C. Cir. 1995); *Tax Analysts v. U.S. Dep't of Justice*, 965 F.2d 1092, 1094 (D.C. Cir. 1992); *State of Tex. v. I.C.C.*, 935 F.2d 728, 733-34 (5th Cir. 1991). It is true that at the time of the request of the documents, they had some potential to inform the public about the IRS and whether its officers were being trained to properly implement tax policy; however, it is undisputed that when the documents were released, there was no information that directly and substantially benefitted the public. There is no evidence of benefit to the public in this case.

The second and third factors, the commercial benefit to the complainant and the nature of the complainant's interest in the records sought, are closely related and often considered together. *Cotton*, 63 F.3d at 1120. "Courts have posited that '[w]hen a litigant seeks disclosure for a commercial benefit or other personal interest, an award of fees is usually inappropriate.'" *Bureau of Land Mgmt.*, 562 F. Supp. 2d at 174 (quoting *Cotton*, 63 F.3d at 1120). Deininger's affidavit, which is uncontested, describes an active law practice devoted to representing tax debtors, extensive

activities in teaching in the area of tax law (much of which is not for remuneration but may indirectly benefit his practice), and substantial activities devoted to improving the tax system. Deininger also is writing a book on the IRS's collection due process program. The Ninth Circuit has held that a scholarly interest weighs in favor of an award of fees. *Long v. IRS*, 932 F.2d 1309, 1314 (9th Cir. 1991). In addition to pointing out that his lectures and writing on the topic are a private interest, the IRS also points out that the information may have been used in the course of Deininger's law practice. In *Fenster v. Brown*, 617 F.2d 740 (D.C. Cir. 1979), attorneys who sought documents that would assist them in counseling clients were not awarded attorneys' fees because of the potential private commercial benefit to the attorneys. *Id.* at 744. Although Deininger's affidavit states that no commercial or other benefit was obtained from the documents, potential commercial benefit existed in this case with respect to the documents requested by Deininger. Deininger's FOIA request says, "These records are being sought in connection with legal research and not for any commercial purposes," but it also says, "We have only requested information which is needed by our office to adequately represent taxpayers." Deininger relies on *Aronson v. U.S. Department of Housing & Urban Development*, 866 F.2d 1 (1st Cir. 1989), for the proposition that a plaintiff's financial interest could simultaneously serve the public good. Deininger's interest is mixed; it is partly commercial (representing tax debtors), partly scholarly, and partly for the public good that can be achieved by improving the IRS. As it turned out, no good was accomplished when the documents were obtained. They did not help Deininger represent clients, nor were they of value in his scholarly pursuits or efforts to improve the IRS. The second and third factors do not weigh in favor of or against an award of attorneys' fees.

The last factor is whether the government's withholding of records had a reasonable basis in the law. "Courts have generally required that defendants, at a minimum, provide meaningful justification for inactivity or refusal to turn over requested information." *Bureau of Land Mgmt.*, 562 F. Supp. 2d at 174. In *Bureau of Land Management*, the court found that the defendant's excuses for its delay and its pattern of setting deadlines for release only to put off those deadlines fell short of a meaningful justification for inactivity. Similarly here, the IRS never provided an explanation for the delays to its own self-imposed deadlines that lasted almost a year, and its excuse of administrative ineptitude falls short of a meaningful justification.

Consideration of the four factors typically considered in deciding whether to award fees pursuant to 5 U.S.C. § 552(a)(4)(E) does not yield a clear result. Apparently, nothing was gained by obtaining the documents: there was no public benefit nor any commercial benefit. Deininger's interest in the records is based partly on his law practice and partly on his apparently earnest desire to see the IRS improve. The IRS had no good reason to take so long to produce the records, which were in existence and readily available at the time of the request.

The four criteria appeared in the Senate version of the bill that would become the 1974 amendments to the FOIA. *Miller*, 779 F.3d at 1389 n.26. Although the criteria were deleted from the bill in its final form, the reason for the deletion, ostensibly, was that it was thought that they were already recognized by the law and reiteration of them was unnecessary. *Id*. In any event, the courts have relied on the Senate Report as a guide to the meaning of the fee-shifting provision of the 1974 amendments to the FOIA. *Fenster*, 617 F.2d at 742 n.4. The Senate Report says, "Each criterion should be considered independently, so that, for example, newsmen would ordinarily recover fees even where the government's defense had a reasonable basis in law, while corporate interests might

11

recover where the withholding was without such basis." S. REP. NO. 93-854, at 171-72 (1974). Considering each factor independently, the Court concludes that the fourth factor justifies an award of fees here. As noted above, there was no good reason, and certainly no reasonable legal basis, for the delay in providing the documents in this case.

> The FOIA does not contain a statutory exception for administrative inefficiency. When a private citizen is obliged to seek legal services in order to wrest from the government information which the government had no legal reason to withhold from him, he is entitled under the Act to be reimbursed for the cost to which he has been put.

*Miller*, 779 F.2d at 1390.

## CONCLUSION

Plaintiffs have substantially prevailed in their objective of acquiring documents from the IRS that were the subject of their FOIA request. Plaintiffs' motion for attorneys' fees is GRANTED. Document #10. Plaintiffs must file an itemized request for the claimed fees within fourteen days of the entry of this order. The IRS then will have fourteen days within which to challenge the reasonableness of the fee request or any specific item of it.

IT IS SO ORDERED this 24th of July, 2009.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE